UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DORA RIVERA,

              Plaintiff,

vs.

ALLRAN ELECTRIC of NY, LLC
and SELIM RUSI, JR.,

              Defendants.

11 CV 3783

COMPLAINT WITH JURY DEMAND

Case No.



Plaintiff, by her attorneys, Tuckner, Sipser, Weinstock & Sipser, ALSP, respectfully complains as follows:

## NATURE OF THE CASE

1. This is an action arising under The Family and Medical Leave Act, 29 U.S.C. §§2601 et seq. ("FMLA"), seeking declaratory and injunctive relief and damages to redress the harms and losses Plaintiff has suffered as a result of being discriminated against in violation of the Family and Medical Leave Act of 1993.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. §§2000e et seq.; 28 U.S.C. §1331, §1343; 29 U.S.C. §2617; 29 U.S.C. §262(c).

1

3. Venue is proper in the Southern District of New York based upon Plaintiff's employment with Defendants within the geographic confines of New York, NY.

## PARTIES

4. Plaintiff Dora Rivera was hired in or about March 2005 as a Receptionist/Office Assistant and was later promoted to a Purchasing Agent position. Plaintiff was an "employee" within the meaning of 29 U.S.C. §2611(2)(A).

5. Defendant Allran Electric of NY, LLC ("Allran") provides services for electrical installation, maintenance, telecommunication and data services, and is an "employer" as defined in 29 U.S.C. §2611(4)(A).

6. Defendant Selim Rusi, Jr. ("Rusi") is Allran's President.

## MATERIAL FACTS

7. Plaintiff commenced employment with Allran in or about March 2005.

8. Plaintiff was a hardworking and dutiful employee, as evidenced by her promotion to the position of Purchasing Agent, yearly salary increases, and receipt of several performance-related bonuses. Prior to her pregnancy, Plaintiff never received any warnings, written or verbal, regarding her work performance.

9.     In or about March 2008, Plaintiff began experiencing severe bleeding, cramps, and other symptoms consistent with a miscarriage while at work. Plaintiff was examined by her OB/GYN, Allen Fuchs, M.D., on or about May 5, 2008, who ascertained that Plaintiff was approximately ten weeks pregnant.

10.    Plaintiff was informed that she had two amniotic sacs in her uterus, but only one fetus. Fuchs determined that Plaintiff had already miscarried one fetus, which was responsible for her symptomology, yet he could not determine whether the other fetus would survive until term. He informed Plaintiff that if she elected to carry this fetus to term, the remainder of the pregnancy would be considered "high risk."

11.    The following day Plaintiff delivered medical documentation describing her pregnancy-related challenges to Chief Executive Officer Tami Van ("Van") and Rusi.

12.    On or about May 16, 2008, Plaintiff was scheduled to undergo a dilation and curettage ("D&C"), a medical procedure in which the remains of an incomplete miscarriage are extracted from a woman's uterus, yet her physician could not perform this procedure as the remaining fetus was still viable and a D&C may have caused a spontaneous abortion.

13.    On or about May 27, 2008, Plaintiff sought medical attention for severe bleeding and abdominal pain. That morning, Plaintiff spoke to Rusi via telephone and left a message for Van, advising Defendants of her medical status. Upon discovering a weak

fetal heart rate, an emergency sonogram was scheduled for May 28, 2008.

14. Upon Plaintiff's return to work, she submitted medical documentation to Rusi with respect to these absences from work and she again explained her ongoing pregnancy-related medical challenges. Rusi indicated that Plaintiff's absences were excused.

15. On days when Plaintiff was compelled to call out sick due to the high risk pregnancy, she always informed Rusi in the morning and submitted any medical documentation when she arrived at work the following day.

16. However, Plaintiff was expected to work from home during those sick days, and she received numerous telephone calls and emails from work.

17. On or about June 5, 2008, Plaintiff provided medical documentation to Rusi and Van, confirming her pregnancy and indicating a December 6, 2008 due date.

18. On or about June 25, 2008, Plaintiff sought medical treatment for profuse bleeding, headaches and swelling in her extremities. She was diagnosed with preeclampsia and prenatal hypertension.

19. Concerned that Plaintiff was facing imminent miscarriage, Fuchs advised Plaintiff

4

to keep her legs elevated and take bed rest until June 27, 2008. Plaintiff informed Rusi of her need for a reasonable accommodation in the form of additional time off.

20. On or about July 6, 2008, Plaintiff met with Van and Rusi to inform them of her further need for ongoing medical care. Plaintiff assured Defendants that she was physically capable of performing the essential functions of her job. Plaintiff was reassured that she should not worry about her job, and she was encouraged to take care of her health.

21. On or about July 7, 2008, Plaintiff again experienced sudden bleeding and immediately sought emergency medical care. Plaintiff brought a doctor's note for Rusi the following day.

22. On or about July 9, 2008, Plaintiff underwent a scheduled Fetal Anatomy Scan, a routine test to determine if the fetus was developing normally. Following the procedure, she was ordered to remain on mandatory bed rest through July 13, 2008.

23. On or about July 14, 2008, Plaintiff met with Rusi to determine whether he felt she should take an earlier maternity leave, but Rusi demurred, advising Plaintiff that it was not necessary, as he wanted her to continue working for as long as possible to delay the need for Defendants to hire a replacement for Plaintiff until absolutely necessary.

24. Two days later, on or about July 16, 2008, Plaintiff was not feeling well when she

left work and, suspecting that she was in danger of having a miscarriage, entered Brookdale University Hospital where she was hospitalized for two days. Plaintiff was then required to consult Fuchs on July 18, 2008, following her release from the hospital.

25. Plaintiff informed Rusi of these latest medical issues, whereupon he told her that she would not be paid for these days off. Rusi also told her to stay home for the period July 21-23, 2008, to ensure that she would be healthy enough to return to her job.

26. When Plaintiff returned to work on or about July 24, 2008, she had a meeting with Allran Vice President William Scanlon ("Scanlon"), and Van, to discuss her absences. Van proposed that Plaintiff take a disability leave, but Plaintiff told her that her physician had at no time forbidden her from working, but rather advised her to do whatever she could to minimize physical exertion.

27. Since Plaintiff's job requirements involve no physical activity, she was fully capable of performing her position. Additionally, she had been telecommuting on days she could not appear in the office, a reasonable accommodation approved by Rusi on multiple occasions.

28. Plaintiff also informed Scanlon and Van that she had been continuously updating Rusi on her medical condition. Scanlon agreed with Rusi that it would be best for Plaintiff to work from home.

6

29.     On or about July 30, 2008, Defendants terminated Plaintiff's employment.

30.     Rusi also advised Plaintiff that he did not think she was capable of "handling" being in the workforce due to her complicated pregnancy.

31.     Plaintiff specifically inquired about the real reason for her termination. Rusi could not provide any instances of poor work performance, instead indicating that she was being terminated for her own safety as well as the safety of her unborn child.

32.     Plaintiff asked Rusi if he would allow her take early maternity leave in lieu of firing her, to which Rusi replied that he had already hired someone else to replace her commencing August 11, 2008. Highly distraught, Plaintiff protested this pregnancy and disability-based termination for absences that were explicitly protected under the Family and Medical Leave Act of 1993.

33.     Rusi then suggested that Plaintiff use her last vacation days and return on August 8, 2008, when she could clean out her desk, and the office could provide her with a "going away party," as if she were just leaving for maternity leave, as opposed to a permanent unilateral separation.

34.     Rusi offered Plaintiff a sum certain in US currency in return for a full release of claims. Plaintiff declined this offer and departed from Defendants' premises.

35.     On or about August 12, 2008, Rusi, Scanlon, and Van met with Plaintiff and

7

inquired as to whether she had further considered the monetary offer. Plaintiff again rejected the offer, indicating what she really needed was her job back.

36. Rusi then angrily discarded the proposed severance agreement and summarily terminated Plaintiff on the spot.

37. Plaintiff's termination was in willful retaliation for, and a willful violation of, Plaintiff's right to leave time under the Family and Medical Leave Act of 1993.

38. From the inception of Plaintiff's pregnancy-related medical complications in March 2008 until her termination on July 30, 2008, Plaintiff was out sick approximately 23 days.

39. In a further retaliatory act, upon her protest of her wrongful termination, Defendant upheld Plaintiff's termination. These actions violated the Family and Medical Leave Act.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE FMLA

40. Plaintiff repeats, reiterates and realleges all allegations contained in paragraphs 1 through 39 of this Complaint as if more fully set out herein.

41. The Family and Medical Leave Act of 1993, 29 U.S.C. §2615 (a) provides that it

shall be unlawful for an employer:

> "(a) to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title."

42. Defendants willfully interfered with and denied Plaintiff's exercise of her rights under this title, 29 U.S.C. §§2601 *et seq.*, when Defendants discriminated and retaliated against her by terminating her because she had taken leave protected by and provided for under the FMLA.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE FMLA

43. Plaintiff repeats, reiterates and realleges all allegations contained in paragraphs 1 through 42 of this Complaint as if more fully set out herein.

44. The Family and Medical Leave Act of 1993, 29 U.S.C. §2615 (a)(2), provides that it shall be unlawful for an employer:

> "(a)(2) to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

45. Defendants engaged in an unlawful employment practice, prohibited by 29 U.S.C. §2615 (a)(2), by discriminating against Plaintiff because she opposed Defendants' unlawful employment practices.

## INJURY AND DAMAGES

46. As a result of Defendants' unlawful discriminatory employment practices, Plaintiff has suffered injury to her reputation, lost wages, extreme emotional and mental distress, as well as ongoing pain and suffering.

## REMEDY

**WHEREFORE**, Plaintiff seeks a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by The Family and Medical Leave Act, 29 U.S.C. §§2601 *et seq.* by terminating or otherwise willfully discriminating against and retaliating against Plaintiff in retaliation for her having used leave time covered under the FMLA.

B. Reinstating Plaintiff to her former job and/or awarding future income to the Plaintiff in an amount to be proven at trial, representing all loss of future earnings, including reasonable and expected increases, loss of retirement income and all other benefits she would have been expected to earn during her entire lifetime, had it not been for Defendant's unlawful discharge of her employment;

C. Awarding damages to the Plaintiff for back pay and to otherwise make her "whole" for any losses suffered as a result of such unlawful employment practices;

D. Awarding Plaintiff liquidated damages for violation of the FMLA;

E. Awarding Plaintiff attorneys' fees, costs and expenses incurred in the

prosecution of the action;

F.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: New York, NY
       May 24, 2011

**Tuckner, Sipser, Weinstock & Sipser, LLP**

By: _____
William J. Sipser (WS 1781)
Attorneys for Plaintiff
120 Broadway, 18th Floor
New York, NY 10271
212.766.9100
www.womensrightsny.com

Case No.                                                                                      Year

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
================================================================

DORA RIVERA,

                Plaintiff,

    vs.

ALLRAN ELECTRIC OF N.Y., LLC and SELIM RUSI, JR.,

           Defendants.

================================================================

## COMPLAINT WITH JURY DEMAND

================================================================

*TUCKNER, SIPSER, WEINSTOCK & SIPSER, LLP*
Attorneys for *Plaintiff*
Office and Post Office Address and Telephone
120 Broadway, 18th Floor
New York, N.Y. 10271
212-766-9100

___

To:

Attorney(s) for

___

Service of a copy of the within       is hereby admitted.

Dated,

                                                Attorney(s) for

Dated,                                             *Yours, etc.*

To:                                              Tuckner, Sipser, Weinstock & Sipser
Attorney(s) for                              120 Broadway, 18th Floor
                                                  New York, New York 10271